IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| MATTHEW VOGT, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  15-1150-MLB |
| | ) | |
| CITY OF HAYS, KANSAS, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' motions to dismiss. (Docs. 11, 13, 15). The motions have been fully briefed and are ripe for decision. (Docs. 12, 14, 16, 26, 27, 28). Defendants' motions are granted for the reasons herein.

**I.   Facts**

Plaintiff Matthew Vogt was employed by defendant City of Hays as a police officer. In late 2013, Vogt sought employment with defendant City of Haysville. During the hiring process, Vogt disclosed to Haysville that he had kept a knife that he obtained while working as a Hays police officer. Defendant Kevin Sexton, a police officer for Haysville, was directed by defendant Jeff Whitfield, Chief of Police for Haysville, to extend an offer of employment to Vogt. The offer of employment was conditioned on Vogt reporting his possession of the knife to the Hays police department.

On December 11, 2013, Vogt reported his possession of the knife to defendant Don Scheibler, Chief of Police for Hays. Scheibler told Vogt to document the facts related to the possession of the knife. Vogt complied and wrote a vague one-sentence report. Vogt then

submitted his two weeks' notice of resignation to the Hays police department.  Defendant Brandon Wright, a police officer for Hays, opened an internal investigation.  Wright informed Vogt that he was only seeking policy violations and was not conducting a criminal investigation.  Vogt gave Wright a statement concerning his possession of the knife.  Scheibler suspended the internal investigation on December 22 and requested the Kansas Bureau of Investigation (KBI) initiate a criminal investigation.  Wright turned all of the evidence over to the KBI.

Due to the criminal investigation, Hays withdrew its offer of employment.  In early 2014, Vogt was charged with two felony counts related to his possession of the knife.  At the probable cause hearing, Vogt's statements were used as evidence.  The charges were dismissed after the court determined that there was no probable cause to support the charges.

Vogt brought this action pursuant to 42 U.S.C. § 1983 against defendants alleging that they violated Vogt's right to be free from self-incrimination.  Defendants move to dismiss the complaint on the basis that it fails to state a claim.

**II.  Motion to Dismiss Standards: FRCP 12(b)(6)**

The standards this court must utilize upon a motion to dismiss are well known.  To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts

are viewed in the light most favorable to plaintiff. <u>Archuleta v. Wagner</u>, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon this court's consideration. <u>Shero v. City of Grove, Okla.</u>, 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. <u>Beedle v. Wilson</u>, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III.   Analysis**

When law enforcement officers abuse their power, suits against them allow those wronged an effective method of redress. See <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987) (citing <u>Harlowe v. Fitzgerald</u>, 457 U.S. 800, 814 (1982)). Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See <u>Am. Mfr's. Mut. Ins. Co. v.</u>

Sullivan, 526 U.S. 40, 49-50 (1999).[1]

Vogt claims that defendants violated his Fifth Amendment right to be free from self-incrimination. Like other individuals, government employees enjoy the protection of the privilege against self-incrimination. The government, however, must ensure that its employees are lawfully performing their duties. The government therefore may "penalize public employees and government contractors (with the loss of their jobs or government contracts) to induce them to respond to inquiries, so long as the answers elicited (and their fruits) are immunized from use in any criminal case against the speaker." Chavez v. Martinez, 538 U.S. 760, 768, 123 S. Ct. 1994 (2003). What the government cannot do is both demand a potentially self-incriminating statement and reserve the right to use that statement in a later criminal proceeding. Id. at 768-69. Public employees cannot be given the "Hobson's choice between self-incrimination and forfeiting [their] means of livelihood." Gardner v Broderick, 392 U.S. 273, 277, 88 S. Ct. 1913 (1968); Gulden v. McCorkle, 680 F.2d 1070, 1074 (5th Cir. 1982) (observing that "it is the compelled answer in combination with the compelled waiver of immunity that creates the Hobson's choice for the employee"). "If the State presents a person with the Hobson's choice of incriminating himself or suffering a penalty, and he nevertheless refuses to respond, the State cannot constitutionally make good on its threat to penalize him." Grand Jury Subpoenas Dated Dec. 7 & 8, Issued to Bob Stover, Chief of Albuquerque Police Dep't v. United States, 40 F.3d

---

[1] Defendants do not deny that they were acting under color of state law.

1096, 1101 (10th Cir. 1994).

### A. 5th Amendment Violation

All defendants contend that Vogt's claims fail because he cannot establish a Fifth Amendment violation. The Tenth Circuit has identified two ways a public employee's Fifth Amendment rights can be violated in a case where an employee was compelled to give a statement. "First, a statement may not be obtained in violation of the Constitution. Thus, the State may not insist that public employees waive their Fifth Amendment privilege against self-incrimination and consent to the use of the fruits of the interrogation in any later proceedings brought against them." Id. "The second restriction placed on the government in this context is a complete prohibition on the use in subsequent criminal proceedings of statements obtained under threat of removal from office." Id. at 1102.

The facts alleged in the complaint show that Vogt is claiming defendants have violated his Fifth Amendment rights by using his compelled statement in the criminal case. There are no allegations that defendants forced Vogt to consent to the use of his compelled statements in the criminal case, i.e. requiring Vogt to waive his Fifth Amendment rights. Therefore, this case turns on whether the compelled statements were used in a criminal proceeding.[2]

Defendants contend that Vogt's statements were not used in a

---

[2] The Haysville defendants additionally contend that they should be dismissed because a conditional offer of employment is not sufficient to trigger a Fifth Amendment violation under Garrity and its progeny. Because the court finds that no constitutional violation has occurred, infra, it is unnecessary to resolve this issue.

criminal case in violation of the Fifth Amendment because Vogt's case was dismissed prior to trial. Vogt, however, cites to language in the most recent Supreme Court case on this issue, Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003), and cases from the Ninth, Seventh and Second Circuits in support of his position that a Fifth Amendment violation occurs when criminal proceedings have commenced and the compelled statements are introduced in those preliminary proceedings. Stoot v. City of Everett, 582 F.3d 910, 925 (9th Cir. 2009); Best v. City of Portland, 554 F.3d 698 (7th Cir. 2009); Higazy v. Templeton, 505 F.3d 161, 170-73 (2nd Cir. 2007).

In Chavez, the Supreme Court addressed whether the right to be free from self-incrimination is violated when no criminal case is brought against the compelled individual. The plaintiff in Chavez was arrested after an incident, taken to the hospital, where the defendant police officer interrogated him while the plaintiff was receiving medical treatment. The plaintiff brought a section 1983 claim against the officer, alleging that the interrogation violated his Fifth Amendment right against self-incrimination. Chavez, 538 U.S. at 764–65. A four-member plurality of the Supreme Court held that a violation of the Fifth Amendment "occurs only if one has been compelled to be a witness against himself in a criminal case." Id. at 770. The Court accordingly held that the officer was entitled to qualified immunity because the plaintiff was never prosecuted for a crime. "However, the plurality in Chavez explicitly declined to decide 'the precise moment when a criminal case commences' for the purposes of the Fifth Amendment right against self-incrimination." Koch v. City of Del City, 660 F.3d 1228, 1245 (10th Cir. 2011)(quoting

Chavez, 538 U.S. at 766–67).

After Chavez, the Tenth Circuit has not answered the question left open by the Supreme Court. In Eidson v. Owens, 515 F.3d 1139 (10th Cir. 2008), the Tenth Circuit was presented with the question of whether the plaintiff's Fifth Amendment rights were violated when her allegedly compelled statement was introduced during the preliminary proceedings of a criminal case. The Tenth Circuit stated that the "right against compelled self-incrimination arguably has no application here because it is a trial right, see Chavez v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 155 L. Ed.2d 984 (2003), and her criminal case never went to trial." Id. at 1149. The Circuit noted that the Supreme Court in Chavez "declined to decide whether use of compelled statements at some point before trial but after the initiation of criminal proceedings was actionable." Id. Ultimately, however, the Circuit determined that the plaintiff did not incriminate herself during a custodial interrogation and therefore, there was no Fifth Amendment violation. The Circuit declined to express its "agreement or disagreement with the Seventh Circuit." Id.

In Sornberger v. City of Knoxville, Illinois, 434 F.3d 1006 (7th Cir. 2006), the Seventh Circuit addressed the question of whether the plaintiffs had stated a violation of the Fifth Amendment after their compelled statements were used to support the criminal charges and introduced in a suppression hearing. The criminal charges against the plaintiffs were ultimately dropped. The Seventh Circuit determined that the statements were used in a criminal case in violation of the Fifth Amendment and, therefore, the plaintiffs could proceed on their claim. Both the Ninth and Second Circuit agree with the Seventh

Circuit. Stoot, 582 F.3d 910; Higazy, 505 F.3d 161. The Circuits, however, are split on this issue.

In Renda v. King, 347 F.3d 550 (3d Cir. 2003), the Third Circuit held that a Fifth Amendment violation does not occur until the compelled statements are used at trial. In Renda, the plaintiff was charged with a crime and her statements were used in obtaining the indictment and during a suppression hearing. The Third Circuit noted that the Supreme Court did not answer the question of whether an individual's Fifth Amendment right is violated when a compelled statement is used to initiate criminal proceedings but prior to trial. In light of the fact that this question was left open, the Third Circuit relied on past precedent which conclusively held that the Fifth Amendment right is not violated until a compelled statement is introduced at trial. Id. at 558-59.

The Fourth, Fifth and Sixth Circuits also hold that the Fifth Amendment right is not violated until a compelled statement is introduced at trial. See Burrell v. Virginia, 395 F.3d 508, 513-14 (4th Cir. 2005) ("He does not allege any trial action that violated his Fifth Amendment rights; thus, ipso facto, his claim fails on the plurality's reasoning [in Chavez]. . ."); Murray v. Earle, 405 F.3d 278, 285 (5th Cir. 2005)("The Fifth Amendment privilege against self-incrimination is a fundamental trial right which can be violated only at trial, even though pre-trial conduct by law enforcement officials may ultimately impair that right."); Smith v. Patterson, Nos. 10-1228, 10-1299, 10-1576, 2011 WL 2745807, *3 (6th Cir. July 14, 2011) ("But when the government does not try to admit the confession at a criminal trial, the Fifth Amendment plays no role.")

In light of the Tenth Circuit's silence on the question, the court holds that it is bound by Tenth Circuit precedent. The Tenth Circuit has consistently held that the Fifth Amendment right to be free from self-incrimination is a trial right. In Pearson v. Weischedel, No. 09-8058, 2009 WL 3336117 (10th Cir. Oct. 19, 2009), the plaintiff was allegedly forced by officers to reveal the location of evidence. The plaintiff was then charged in a criminal case based on the evidence which was obtained as a result of the allegedly coerced statement. The plaintiff plead guilty to the charges. The Tenth Circuit held that "[a]lthough conduct by law enforcement officials prior to trial may ultimately impair the privilege against self-incrimination, a constitutional violation occurs only at trial." Id. (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S. Ct. 1056 (1990)).

In Stover, 40 F.3d at 1101-03, the Tenth Circuit held that the protections of the Fifth Amendment are not realized until the government attempts to make use of compelled statements at trial. In Stover, officers were compelled to make statements to a grand jury. The Tenth Circuit recognized that their statements could potentially result in the initiation of a criminal case, however, the Circuit stated that the "time for protection will come when, if ever, the government attempts to use the information against the defendant at trial. We are not willing to assume that the government will make such use, or if it does, that a court will allow it to do so." Id. at 1103. In Eidson, 515 F.3d at 1149, the Circuit also reiterated that the Fifth Amendment is not implicated until trial.

In this case, the compelled statements were allegedly used in

-9-

obtaining the criminal charges and in the probable cause hearing. The criminal charges, however, were dismissed by the district judge. Therefore, the compelled statements were never introduced against Vogt at trial. While Chavez may indicate that the Supreme Court could recognize a Fifth Amendment violation if a compelled statement is introduced during criminal proceedings before trial, the Supreme Court has yet to affirmatively state so. Therefore, this court is bound by Tenth Circuit and Supreme Court authority which conclusively hold that a "constitutional violation occurs only at trial." United States v. Verdugo-Urquidez, 494 U.S. 259, 264, 110 S. Ct. 1056 (1990).

Accordingly, the court finds that Vogt's complaint fails to state a violation of his Fifth Amendment rights.

### IV. Conclusion

Defendants' motions to dismiss are granted. (Docs. 11, 13, 15).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   30th   day of September 2015, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE